UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Ruth Ann Kuebler, et vir.,**

    *Plaintiffs*,

v.                                                                              Case No. 3:12-cv-114
                                                                             Judge Thomas M. Rose

**Gemini Transportation and Samir Sakanovic,**

    *Defendants*.

---

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT,** DOC. 23, **AND FINDING MOOT DEFENDANTS' MOTION TO STRIKE THE AFFIDAVIT OF JAMES B. CRAWFORD.** DOC. 31.

---

Pending before the Court are Defendants' Motion for Partial Summary Judgment. Doc. 23 and 31.  In the motion for summary judgment, Defendants Gemini Transportation, LLC and Samir Sakanovic request that the Court enter summary judgment on the negligence claims against Gemini and on the punitive damages claims against both defendants.  The other pending motion requests that the Court strike a proposed expert's affidavit for lack of qualifications.

Plaintiffs do not contest the motion for summary judgment with regard to their claim that Gemini Transport negligently hired and retained Sakanovic, thus this portion of the motion for summary judgment will be granted.  With regard to the punitive damages claims, because there is no evidence of malice or of ratification or of violations of safety regulations with regard to

Sakanovic, Defendants' motion for summary judgment will be granted. Because Plaintiff has now filed a record of her proposed expert's credentials with the Court, doc. 32, 32-1, the motion to strike is moot.

### I. Background

On September 26, 2011, Plaintiff Ruth Ann Kuebler was traveling northbound on I-75 in the right outside lane. Kuebler Depo. at 34. She was observing the 55 m.p.h. speed limit. Kuebler Depo. at 31. Traffic was heavy. Kuebler Depo. at 31. Defendant Sakanovic was behind her in the same lane. Kuebler Depo. at 31. He moved to go around her and as he was changing lanes, he came into her lane, making contact. In Kuebler's words, Sakanovic "creamed" her car, knocking of a mirror and denting the door. Kuebler Depo. at 31, 39. Plaintiff describes Sakanovic as speeding at the time: "[h]e was flying. I remember thinking at the time that he was driving so fast and changing lanes so fast to the left..." Kuebler Depo. at 31. Sakanovic did not stop. Kuebler Depo. at 31.

An independent witness saw the crash, called 911 and gave the police the truck name and license number. Shockley Aff., Doc. 28-6. Sakanovic was subsequently stopped by the police. Sakanovic Depo. at 61.

Back at the scene of the accident, after waiting fifteen minutes in hopes that a police officer would drive by, Plaintiff decided to get back in her car and drive further up I-75 looking for an exit. Kuebler Depo., at 33–39. As she drove, she noticed a state trooper driving north on I-75. *Id.* She signaled to the trooper, and pulled over. *Id.* The trooper informed her that another officer had a tractor-trailer pulled over a mile or two up the road which might be the vehicle that made contact with her car. *Id.* at 41. Plaintiff followed the trooper to Sakanovic's tractor-trailer. *Id.* The

second officer arrived on the scene with Plaintiff and interviewed Sakanovic. Sakanovic Affidavit, ¶ 6.

After speaking with Sakanovic and Plaintiff, the officers released Sakanovic without issuing him a citation. *Id.* at ¶ 7, Sakanovic Depo., at 71. (Exhibit "D").

Sakanovic denies he was involved in an accident with Plaintiff. He claims he did not feel her car contact his truck or trailer.

> Q: Okay. Is it – is it your testimony today that your trailer and her car never touched, ever?
>
> A: No. I didn't feel any touch.

*Id.* at 63.

He claims he never saw Plaintiff's car bump into his trailer:

> Q: How do you know – let's say, just hypothetically, that she was in her lane and came over into your lane and ran into your trailer, how do you know that didn't happen, that she never touched you?
>
> A: I could feel it, or I could saw [sic] in my mirror if she do that.

*Id.* at 64–65. Further, he wasn't cited by the police when they stopped him and asked him about the incident. *Id.* at 71. He denies ever coming into contact with Plaintiff's car. Sakanovic Depo. at 63.

Plaintiff also brings to the Court's attention the safety record of Sakanovic's employer, Defendant Gemini Transportation. In the year preceding the crash, Gemini exceeded the threshold for four of the five safety measurements conducted by the Federal Motor Carrier Safety Administration. Petkovich Depo. at 45-46. Moreover, Gemini was cited for repeatedly failing to conduct random alcohol testing, failing to conduct controlled substance testing, and falsely reporting records of duty status 53 times. Petkovich Depo., Ex. 7. In fact, just thirteen days before

this collision Gemini entered into a settlement agreement with the Federal Motor Carrier Safety Administration where it agreed to pay over $81,000 in fines for 61 violations of the drug and alcohol regulations and promised to ensure compliance with, and have no further violations of, federal drug and alcohol testing requirements. Petkovich Depo., Ex. 7.  For its part, Gemini Transport claims to have identified the drivers involved in the Federal Motor Carrier Safety Administration violations and terminated them. Petkovich Affidavit, ¶10.  Sakanovic continues to work for Gemini.

On April 17, 2012, Ruth Ann Kuebler and Donald Kuebler filed the instant action in this Court, asserting diversity jurisdiction.  The complaint asserts claims for negligence by Samir Sakanovic, *per se* negligence by Sakanovic based upon statutory and regulatory violations, punitive damages against Sakanovic, vicarious liability of Gemini Transport, strict liability of Gemini transport, negligent hiring and retention by Gemini Transport, statutory violations by Gemini Transport, punitive damages against Gemini Transport and consortium. Doc. 1.

After the completion of discovery, Defendants filed Motion for Partial Summary Judgment, doc. 23, asking the Court to enter judgment on the negligence claim against Gemini Transport, and on the punitive damages claims against both defendants.  Plaintiffs opposed the award of summary judgment on the punitive damages claims, conceding the negligent hiring and retention, and including among the documents supporting their response an affidavit from James B. Crawford.  Defendants replied and that same day moved the Court to strike Crawford's affidavit, asserting that Crawford does not qualify as an expert under the Federal Rules of Procedure, as, they claim, he failed to file any evidence of his credentials.  Plaintiffs responded to this asserting that his resume was attached to their response, and resubmitting it to the Court.

**II.**     **Summary Judgment Standard**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law.  Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56 "requires the nonmoving party to

go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id*.

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

Defendants seek summary judgment on Plaintiffs' claims brought under Ohio law. In reviewing a claim under Ohio law, this Court must interpret Ohio law consistent with the interpretations of the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the State.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998). Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id*. (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).

**III.    Analysis**

A.      **Punitive Damages Against Sakanovic**

Because Plaintiff filed this case under 28 U.S.C. § 1332, "state law governs the substantive issues and federal law governs the procedural issues . . . ." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012), citing *Gass v. Marriott Hotel Svcs., Inc.*, 558 F.3d 419, 425-26 (6th Cir. 2009). Under Ohio law, punitive damages may be awarded in tort claims only upon a finding of actual malice, fraud, or insult on the part of the defendant. Ohio Rev. Code §2315.21; *Roberts v. Mason*, 10 Ohio St. 277 (1859); *Estate of Beavers v. Knapp*, 889 N.E. 2d 181, 190 (Ohio App. 2008). In this case, there is no allegation of fraud or insult and, as such, any punitive damage award must necessarily rest on the presence of actual malice. Regarding "actual malice," the Ohio Supreme Court instructs that:

> [A]ctual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. In the latter case, before submitting the issue of punitive damages to the jury, a trial court must review the evidence to determine if reasonable minds can differ as to whether the party was aware his or her act had a great probability of causing substantial harm. Furthermore, the court must determine that sufficient evidence is presented revealing that the party consciously disregarded the injured party's rights or safety.

*Preston v. Murty*, 336, 512 N.E.2d 1174, 1176 (Ohio 1987). Plaintiffs rest their claim for punitive damages upon the latter requirement of *Preston*, i.e., a "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Thus, the Court must determine "if reasonable minds can differ as to whether [Sakanovic] was aware that . . . his [manner of driving] had a great probability of causing substantial harm"; and then determine whether there is sufficient evidence that he consciously disregarded Plaintiff's safety – while bearing in mind that "something more than mere negligence is always required." *Id.* at 335.

7

Moreover, Plaintiffs must demonstrate actual malice with "clear and convincing evidence." *Baby Tenda v. Taft Broadcasting*, 63 Ohio App.3d. 550, 553 (Ohio App. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). As the Ohio Supreme Court stated:

> [A]ctual malice requires consciousness of the near certainty (or otherwise stated "great probability") that substantial harm will be caused by the tortious behavior. Any less callous mental state is insufficient to incur that level of societal outrage necessary to justify an award of punitive damages. Therefore, it is evident that a reckless actor, who only has knowledge of the mere possibility that his or her actions may result in substantial harm, is not behaving maliciously.

*Motorists Mut. Inc. Co. v. Said*, 590 N.E.2d 1228, 1234 (1992), overruled on other grounds by *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397 (1994). The focus is on the actor's conscious disregard of an almost certain risk of substantial harm. This distinguishes "malicious" from "non-malicious" conduct.

Defendants focus on a claim that Sakanovic was unaware that he had struck Kuebler as evidence of absence of malice. The inquiry, however is upon an awareness of the probable consequences of his action prior to hitting Kuebler.

Plaintiff's expert, an eyewitness and Sakanovic all testify that if he hit her, he should have felt it. And there is independent testimony that he hit her. Thus, he should have felt it and stopped. Gemini's safety manager believes Sakanovic would have felt the impact if it had occurred. Petkovich Depo. at 20. Defendants concede it did occur, thus it is possible for a jury to infer Sakanovic decided not to stop. Plaintiff asks that the Court allow a jury to infer malice from Sakanovic's decision not to stop.

Plaintiffs assert the instant case is analogous to the case of *Estate of Beavers v. Knapp*, 889 N.E.2d 181 (Ohio App. 2008), in which a truck started to make a left turn in front of a motorcycle.

The motorcyclist attempted to avoid the truck and spilled onto the roadway. The truck driver then panicked and fled the scene, crushing the motorcycle driver, killing him.

> Knapp saw Beavers fall from the motorcycle and tumble toward his truck. Knapp admitted that as he saw Beavers coming toward him, he could have stopped. Instead, however, Knapp panicked, accelerated, and left the scene. Moreover, in the process of leaving the scene, Knapp knew that he had hit something when he felt the truck's rear wheels raise. Despite his awareness of Beavers's fall, knowledge of Beavers and the motorcycle sliding toward the trailer, and the realization that he had hit something, Knapp decided to continue toward his destination. Additionally, Knapp admitted thinking that he should not be leaving the scene of the accident. From such evidence, the jury could have found a positive element of conscious wrongdoing by Knapp. Furthermore, similar to the evidence the Supreme Court found relevant to prove actual malice in *Cappara*, evidence of Knapp's request for the shipper to misstate his arrival time on his delivery documents, in hopes of creating an alibi, was relevant to the determination of malice.

*Estate of Beavers v. Knapp*, 889 N.E.2d 181, 193 (Ohio App. Dist. 2008). In a word, the defendant in *Beavers* did much more than just flee the scene, and his decision to flee caused injury, death—facts not wholly on all fours with the case at bar.

Plaintiff also relies upon the Ohio Supreme Court's decision in *Cappara v. Schibley*, 85 Ohio St. 3d 403 (1999), a case in which the court was "confronted…with the issue of whether a person's record of DUI convictions, subsequent in time to an earlier accident, is admissible to prove that person's state of mind, i.e., malice or conscious disregard for the rights and safety of other persons, at the time of the earlier accident." *Cappara v. Schibley*, 709 N.E.2d 117, 119-20 (Ohio 1999). While the court stated that evidence of the defendant's fleeing from the accident scene and subsequent failure to disclose his involvement in the accident was admissible in attempting to establish a punitive damages award, this was dicta, and even in that capacity, fell

9

short of stating that this evidence alone sufficed to allow a jury to find a basis for awarding punitive damages.

Similarly, when Plaintiff draws the court's attention to *Clark v. Torres*, 956 F.2d 263, 1992 WL 35793 (4th Cir. 1992), Plaintiff highlights that Torres's flight from the scene was a factor that can be considered when determining whether to give a punitive damages instruction, but fails to mention that Defendant Teresa Torres had admitted consuming two beers, and that her van had struck the motorcycle broadside, tearing off a portion of her bumper and grill and denting her hood before she fled the scene. Thus, this case does not stand for the proposition that flight alone warrants a punitive damages instruction.

Plaintiff's final case on this point is *Randazzo v. Grandy*, 2011 WL 1811221 (M.D. Pa. 2011), in which defendant "was stopped at a stop sign …[and f]or reasons unknown to the Plaintiff…put his vehicle in reverse and collided with the Plaintiffs' vehicle numerous times, ultimately driving it approximately thirty…feet in the opposite direction on East Grove Street." *Randazzo v. Grandy*, 2011 WL 1811221, 1 (M.D. Pa. 2011). According to Plaintiff, this case stands for the proposition that "Defendant's truck backing into Plaintiff then leaving the scene is sufficient evidence for jury to determine whether defendant exhibited reckless, willful and wanton behavior[.]" Plaintiff does not give a pinpoint citation, and, in the Court's eyes, the case does not appear to boil down to this nugget. Indeed, the authoring judge repeatedly emphasized the dangerous decision of an experienced driver to back up his truck on a residential street. *Id.* at *9 . ("the best way to back a tractor trailer is not to do it all").

In order to prevail on the claim for punitive damages against Sakanovic, Plaintiff's burden is to adduce evidence regarding Sakanovic's state of mind prior to the accident. The only evidence Plaintiff has is a string of evidence from which one could possibly conclude that

10

Sakanovic knowingly fled the scene after the accident. Standing alone, this is insufficient. It is admissible at trial to allow a jury to conclude Sakanovic acted willfully if combined with other evidence. As Magistrate Judge Litkovitz noted while analyzing the significance of evidence regarding intoxication and fleeing the scene of an accident, "as the degree of impairment by their voluntary consumption of alcohol increases, the need for other aggravating circumstances [such as flight] lessens; and vice versa." *MacNeill v. Wyatt*, 917 F. Supp. 2d. 726 (S.D. Ohio 2013)(citing *Cabe v. Lunich*, 640 N.E.2d 159, 163 (Ohio 1994). Had defendant fled possibly to allow the alcohol in his blood to dissipate, as in *Torres*, or had defendant admitted to fleeing because of the initial impact, and fatally crushed the victim of the accident while fleeing, as in *Grandy*, defendant's flight would be momentous; standing alone, it is nothing.

**B.     Vicarious Liability for Punitive Damages**

Punitive damages can be awarded against an employer in a tort action where either the employer's actions directly demonstrated malice or fraud, or the employer authorized, participated in, or ratified such actions by its employee. Ohio Rev. Code § 2315.21(C)(1). A party seeking punitive damages must meet the heightened burden of proving entitlement to them by clear and convincing evidence. *Estate of Schmidt v. Derenia*, 822 N.E.2d 401, 405 (Ohio App. 2004)(citing Ohio Rev. Code § 2315.21(C)). Plaintiffs seek punitive damages from Gemini on both bases.

As regards Gemini's own actions, Plaintiffs have not produced any evidence to show that Gemini's own acts or omissions with respect to the hiring and retention of Sakanovic demonstrated malice. See *Estate of Beavers*, 889 N.E.2d at 201 (''Even where a plaintiff proves a claim of negligent hiring, the plaintiff must establish actual malice before he is entitled to recover punitive damages.'') (citing *Stephens v. A–Able Rents Co.,* 101 Ohio App.3d 20, 654 N.E.2d 1315 (8th Dist. 1995)). To the contrary, the only evidence introduced by Plaintiffs concerns other

Gemini employees, whom Gemini terminated for their Federal Motor Carrier Safety Administration logbook violations. Sakanovic's driving record and experience shows Sakanovic was an experienced tractor-trailer driver who had operated large trucks for years.

As for expressly or impliedly ratifying Sakanovic's actions, since there is no evidence that Sakanovic acted with malice, Gemini cannot be held liable for punitive damages on the theory it authorized, participated in, or ratified actions by Sakanovic that demonstrated malice.

Thus, plaintiffs' evidence fails to support a claim for punitive damages with regard to Gemini's hiring and retention of Sakanovic. Gemini is entitled to summary judgment on plaintiffs' punitive damages claims.

**C.     Post-Accident Drug Alcohol Test**

Finally, Plaintiffs request that the Court find Gemini negligent in not administering a drug or alcohol test to Sakanovic, as, Plaintiffs claim, 49 C.F.R. § 382.303 requires. Alternatively, Plaintiffs request a jury instruction that the jury may infer that Sakanovic was impaired at the time of the accident for the same reason. However, 49 C.F.R. § 382.303 only requires drug and alcohol testing if the driver is cited or a fatality occurred, neither of which are true in the instant case. The case Plaintiffs attempt to cite to for support of their position, *Wa[]nke v. Lynn's Transportation Co.*, [836] F. Supp. 587 (N.D. Ind. 1993), could hardly be farther afield. In that case company policy, not federal regulations, demanded a test which was scheduled and subsequently cancelled. None of these factors are present here. Gemini was not required to test Sakanovic under federal, state or company regulations. None was ever scheduled and none was ever cancelled. Plaintiffs have presented no evidence of negligence on the part of Gemini, leaving nothing from which a jury could draw an inference.

**IV.    Conclusion**

Because Plaintiffs do not contest the motion for summary judgment with regard to their claim that Gemini Transport negligently hired and retained Sakanovic, summary judgment on this claim is **GRANTED**.   Because there is no evidence of malice on the part of Sakanovic or Gemini Transportation, or of ratification of Sakanovic's action by Gemini, or of violations of safety regulations with regard to Sakanovic, summary judgment is **GRANTED** to Defendants on Plaintiffs' punitive damages claims.   Because Gemini Transport had no duty to test Sakanovic for drugs or alcohol after his encounter with Ruth Ann Kuebler, summary judgment is **GRANTED** to Defendants on Plaintiff's claim of negligent failure to test.   Thus, Defendants' motion for summary judgment, doc. 23, is **GRANTED**.   Because Plaintiff has now filed a record of her proposed expert's credentials with the Court, doc. 32, 32-1, the motion to strike, Doc. 31, is **MOOT**.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, December 9, 2013.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE